NOT DESIGNATED FOR PUBLICATION

No. 120,899

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS ABBEY LESSMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EDWARD E. BOUKER, judge. Opinion filed June 11, 2021.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE and GARDNER, JJ.

POWELL, J.: "I fought the law and the law won" is the popular refrain from a well-known song and perhaps best describes Thomas Abbey Lessman's efforts to improperly influence the administration of justice. Using insults, profanity, and outright fabrications, Lessman attempted to force the recusal of the district judge handling his paternity case. The district judge refused, and Lessman's actions got him charged and then convicted of one count of perjury and two counts of interference with the judicial process. Lessman now appeals his interference with the judicial process convictions, arguing there was insufficient evidence to support them. We disagree and affirm.

1

On June 10, 2015, Lessman and Brenda Shirley, the mother of his child, filed dueling protection from abuse (PFA) petitions. The next day Judge Mary Mattivi signed a temporary PFA order in favor of Shirley's petition and dismissed Lessman's petition. On June 23, 2015, Judge Teresa Watson held a formal PFA hearing, concluded the evidence justified the issuance of the PFA order, and ordered the PFA to be in effect for one year. One year later, Judge Watson granted an extension of that order.

On August 20, 2015, Lessman filed a paternity action to gain custody of his and Shirley's child. Judge Watson was assigned to the case, and she issued temporary orders granting Lessman supervised visits with the child because his paternity had not yet been established. Judge Watson ordered genetic testing to determine if Lessman was the father and later ordered Lessman to pay temporary child support. Ultimately, genetic testing established Lessman as the father. Several hearings during the spring of 2016 were held in which Lessman's parenting time was modified. The final paternity order declared Lessman the father by agreement, and Judge Watson's order set out custody and parenting time arrangements and continued Lessman's child support obligation.

Throughout the paternity case, Lessman made several Facebook posts and sent several emails to others—including to Judge Watson's administrative assistant, Angela Cox—expressing his displeasure with Judge Watson's actions in the case. The posts and emails eventually led to the State charging Lessman with several counts of interference with the judicial process. As the parties are well acquainted with the facts, we recount only the emails relating to Lessman's eventual convictions.

In an email on June 9, 2016, entitled "Judge Theresa 'Thumbsucker' Watson," Lessman decided to address Judge Watson directly:

2

"Hi Theresa. Since you obviously get copies of all my emails and Facebook posts, I figure I'll just start addressing you directly. (Altho have you seen my latest posts? They highlight your pathetic reign of error rather well!)

"For starters, have you recused your obviously biased stupid ass from this case (and ALL future cases involving me) yet? I mean your ignorance is bad enough but could be excused under SOME circumstances. However your appearance of bias against me, which has been obvious ever since the first time I was in your unethical shit hole of a Kangaroo Court, is inexcusable and proof that you aren't fit to sit your ass on that bench."

Lessman's email proceeded through a timeline of the case and the various errors and prejudices he claims he observed from Judge Watson. He ended his email with:

"RECUSE YOUR BIASED, INCOMPETENT, IGNORANT, CORRUPT, DISHONORABLE ass from this case and any & all future cases involving me, you piece of black-robed shit.

You are dismissed. That is all."

On July 22, 2016, after the conclusion of his paternity case, Lessman sent another email to Judge Watson:

"OK Teresa, I gave u several chances to prove me wrong about your fake ass bullshit court. And like a dumb fucking c__t, u chose to prove my point. I bet your mother would be proud of how u abused your authority to cover up Brenduh's lies and cover your own biased and incompetent ass—if only Dorothy hadn't dropped that house on her in the Wizard of Oz, leaving u stuck with your obviously shitty father. He must have been really bad too, you poor lil pathetic father-hating c__t. But I don't feel a damned bit sorry for u because u brought all of this on yourself. So congrats on 'winning' round one.

"Now we step into round 2—and I guarantee that u won't win this round. So you . . . might want to buckle up, because round 2 is gonna be a bumpy ride…"

3

Lessman's email also included a doctored photo of Judge Watson stating she enjoyed sexual intercourse with animals.

The day after the paternity case concluded, Judge Watson learned Lessman had filed a petition seeking a protection from abuse (PFA) order against her, alleging Lessman and Judge Watson had formerly been in a sexual relationship. Lessman signed the petition and verified its accuracy under the penalty of perjury. The petition was reviewed by another judge and dismissed the same day.

In August 2016, Sergeant Andrew Dale of the Shawnee County Sheriff's Office began investigating Lessman after receiving a report from courthouse security regarding Lessman's petition for a PFA, his Facebook posts, and his emails. Dale and Lessman spoke about the issue over the phone.

Lessman told Dale several times that Judge Watson should have recused herself because she was biased and wrong. Lessman said he would continue his actions for 30 years or until Judge Watson gave Lessman his daughter back. Lessman told Dale about an earlier time when he stood outside the courthouse with a derogatory picture of another judge when that judge was threatening Lessman with jail for not paying child support. Lessman claimed the judge never threatened him with jail time after that because the judge realized "this guy's maybe serious."

The State charged Lessman with one count of perjury, five counts of interference with the judicial process—direct communication, and one count of interference with the judicial process—communicating threats.

A jury convicted Lessman of perjury and two counts of interference with the judicial process—direct communication for the emails of June 9, 2016, and July 22,

2016, and found Lessman not guilty of the remaining charges. The district court sentenced Lessman to 21 months in prison but granted him probation from that sentence for 12 months.

Lessman timely appeals.

## DID SUFFICIENT EVIDENCE EXIST TO CONVICT LESSMAN OF TWO COUNTS OF INTERFERENCE WITH THE JUDICIAL PROCESS?

Lessman begins his brief by explaining the State charged him with perjury in Count 1 of the indictment but, immediately following that, he provides the jury instruction for interference with the judicial process—a different crime for which he was also convicted. Lessman makes no more mention in his brief of his perjury conviction. Thus, we consider any challenge to his perjury conviction abandoned. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("Issues not adequately briefed are deemed waived or abandoned.").

Lessman argues there was insufficient evidence to prove he intended to improperly influence Judge Watson. Lessman asks us to focus on Cox's and Judge Watson's testimony, which he argues does not prove he intended to improperly influence Judge Watson. The State responds that Lessman's posts and emails show he was trying to coerce Judge Watson off the case and his phone call with Dale is evidence that he was not going to stop until Judge Watson gave him custody of his daughter.

*Standard of Review*

When a criminal defendant challenges the sufficiency of the evidence, the appropriate standard of review is "whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder

5

could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). A guilty verdict will be reversed "only in rare cases when the court determines that [the] evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). Circumstantial evidence may sustain a conviction if there is evidence to support a finding that each element of the charged crime was met. *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009).

*Analysis*

"Due process requires the State to prove every element of the charged crime." *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017). To determine what elements the State must prove, we look to the statute. *Torres*, 308 Kan. at 488.

Under the relevant subsection, interference with the judicial process is "[c]ommunicating with any judicial officer in relation to any matter which is or may be brought before such judge, magistrate, master or juror with intent to improperly influence such officer." K.S.A. 2020 Supp. 21-5905(a)(1). The phrase "with intent to improperly influence a judicial officer" covers a broad range of conduct "but is limited to conduct affecting a governmental function, the administration of justice by a judicial officer in relation to any matter which is or may be brought before him as a judicial officer." *State v. Torline*, 215 Kan. 539, 542, 527 P.2d 994 (1974). "The common meaning of 'improperly influence' is to impermissibly change someone's behavior or thinking. See American Heritage Dictionary 884 (5th ed. 2011) (defining 'improper' as '[n]ot consistent with established . . . rule'); American Heritage Dictionary 901 (5th ed. 2011) (defining 'influence' as 'to change the behavior or thinking of someone; sway')." *State v. Matei*, No. 110,003, 2015 WL 249680, at *12 (Kan. App. 2015) (unpublished opinion). But, when

6

the attempted influence directed against a judicial officer comes after the final termination of the proceedings, there is no attempt to improperly influence a judicial officer. *Torline*, 215 Kan. at 543.

A jury convicted Lessman of interference with the judicial process based on emails he sent on June 9 and July 22, 2016. A review of the record shows that, when viewed in a light most favorable to the state, a rational juror could find Lessman guilty beyond a reasonable doubt.

1. *June 9, 2016 interference with the judicial process conviction*

Lessman addressed Judge Watson directly in the profane and insult-laden email he sent on June 9. Lessman went through the errors he believed Judge Watson perpetrated on him, ultimately finding 13 strikes against her. Lessman accused Judge Watson of being biased and not being fit to sit on any bench. Lessman ended his email by ordering Judge Watson to recuse herself from the current case and any future cases involving him. The text of Lessman's email alone is sufficient to support his conviction for the June 9 interference with the judicial process.

Added evidence of Lessman's intent comes from his phone conversation with Dale. Lessman told Dale about previous actions he took against another judge who had been threatening Lessman with jail for not paying child support. Lessman also informed Dale that he would continue his protest against Judge Watson for 30 years or until she gave Lessman his daughter back.

Based on this record, we have no trouble concluding a rational juror could find from the evidence that Lessman intended to improperly influence Judge Watson to recuse herself from his paternity action and to pressure Judge Watson to give Lessman custody over his daughter.

2. *July 22, 2016 interference with the judicial process conviction*

Lessman addressed Judge Watson in another profane and insult-laden email on July 22, after Judge Watson had issued her final journal entry in Lessman's paternity case. In this email, Lessman again accused Judge Watson of being biased and incompetent. Lessman congratulated Judge Watson on "'winning' round one" then threatened that the next round was "gonna be a bumpy ride." Given that district courts retain jurisdiction after final paternity orders are issued to modify child custody and support, coupled with Lessman's admission in his conversation with Dale that he would continue his protest against Judge Watson for 30 years or until she gave Lessman his daughter back, there is evidence from which a rational juror could conclude Lessman's July 22 email intended to improperly threaten and pressure Judge Watson into altering her rulings.

The State presented sufficient evidence to find Lessman guilty of the two counts of interference with the judicial process.

Affirmed.