NOT DESIGNATED FOR PUBLICATION

No. 123,861

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUAN GILBERT FRANCO-MONSERRATE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed September 9, 2022. Affirmed.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, for appellant.

*Michael R. Serra*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: Juan G. Franco-Monserrate, an inmate, filed a K.S.A. 60-1507 motion alleging various trial errors and claiming his trial counsel was ineffective on many grounds. The district court summarily dismissed Franco's motion without granting an evidentiary hearing. On appeal, Franco concedes most of the district court's decision was proper but claims the district court erred when it did not grant an evidentiary hearing on two of his claims. But the claims that Franco challenges on appeal are conclusory and not supported by the record. As a result, we find the district court did not err when it summarily denied Franco's K.S.A. 60-1507 motion without an evidentiary hearing.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2016, a jury convicted Franco of two counts of aggravated indecent liberties with a child, in violation of K.S.A. 21-3504(a)(3)(A) (now codified at K.S.A. 2021 Supp. 21-5506[b][3][A]). A panel of this court summarized the facts underlying the convictions:

"The State charged Franco with a series of sex crimes against D.F.A. All the crimes allegedly occurred between May 2012 and May 2015 when D.F.A. was 11 to 14 years old. We note that D.F.A. was generally described throughout the case as mentally handicapped with an I.Q. of 52, compared to half of the general population who have an I.Q. between 90 and 110. Her credibility was an issue.

"Indeed, in a separate case, the State charged [E.S.], D.F.A.'s grandfather, with two counts of rape of D.F.A. and aggravated criminal sodomy of a child under 14. During the preliminary hearing in [E.S.'s] case, D.F.A. confirmed she had told her interviewers that she wanted her grandfather in jail, but her father out of jail because she loved her father and did not want both of them to go to jail for what they did to her. Franco brought her statements to the attention of his trial judge.

"The trial court was unconvinced and found that the testimony from [E.S.'s] preliminary hearing provided no reasonable probability that D.F.A. made any false accusations against Franco. Instead, the trial court found that the child's testimony reflected that she still had deep feelings about her father and wanted him out of jail. But this was not the only evidence questioning D.F.A.'s credibility.

"The jury heard conflicting evidence about D.F.A.'s lying. D.F.A.'s mother, D.A., testified at Franco's preliminary hearing that the child said she lied about the things Franco had done to her. D.A. also stated that lying was never a 'big issue' with D.F.A. Then, the State's child interviewer testified that D.F.A. had made that comment about lying in her interview. But the interviewer placed the comment in the context of the entire interview, including the sensory details related to several incidents of sexual contact with her father, and the 'drilling' and interrogation-like questions from her family members about whether she was lying. The trial court ruled that D.F.A.'s comment to her mother about lying about her father was admissible at trial because it could be considered to

2

directly contradict the child's testimony and impeach her credibility. Evidence on [E.S.'s] case was excluded from Franco's trial.

"The jury convicted Franco of the two counts of aggravated indecent liberties with a child under 14, but found him not guilty on the remaining charges.

"After Franco's trial, D.F.A. learned from her grandmother, T.A., that her father was not coming home. T.A. claimed that the child then told her she could call the jail and tell the authorities to let [E.S.] go because he had not done anything to her.

"After Franco's convictions, [E.S.] entered a no contest plea to a reduced charge of attempted indecent liberties with a child between 14 and 16 years, a severity level 6 person felony. At [E.S.'s] plea hearing, he raised no issues on the State's factual basis for the charge, and agreed that if he went to trial, the State would be able to prove the allegation. The court accepted [E.S.'s] plea, found him guilty, and he is now serving his sentence.

"Franco then asked for a new trial. He argued the trial court abused its discretion in excluding evidence of other sexual misconduct allegations by D.F.A., and there was newly discovered evidence from the conversation reported by T.A. with D.F.A. The district court received evidence on Franco's motion for a new trial. D.F.A. did not testify at the hearing. The court later denied Franco's motion.

"Franco is now serving two concurrent hard 25 life in prison terms." *State v. Franco-Monserrate*, No. 118,573, 2019 WL 1087142, at *1-2 (Kan. App, 2019) (unpublished opinion).

On appeal to this court, Franco claimed he should have been granted a new trial based on the alleged recantation of the victim. The panel disagreed and affirmed Franco's convictions, finding he failed to show the victim's alleged recantation would have materially affected the outcome of his case. 2019 WL 1087142, at *4. The mandate was issued on December 18, 2019, after the Kansas Supreme Court denied Franco's petition for review.

In October 2020, Franco filed multiple pro se motions, including a motion for new trial, a motion to appoint counsel, and a motion seeking habeas relief under K.S.A. 60-1507. Franco made many claims in his various motions, but only two claims asserted in

his K.S.A. 60-1507 motion specifically claiming ineffective assistance of trial counsel are relevant to this appeal:

- Franco argued his trial counsel was ineffective because she "failed to ask [the] court or agree with [Franco] to call for [an] 'interpreter,'" in violation of K.S.A. 75-4351(e). Franco alleged that because his primary language is Spanish, his statements were not knowingly given and seems to claim this rendered his *Miranda* warnings involuntary. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
- Franco briefly argued his trial counsel was ineffective because she did not advise him as to any plea offer. Franco solely argued his trial counsel "failed to properly advise defendant on any plea deal? [*sic*]"

The State responded to Franco's motions but did not explicitly respond to Franco's ineffective assistance of trial allegations concerning any plea deals or his request for an interpreter.

On February 5, 2021, the district court summarily denied Franco's K.S.A. 60-1507 motion. In its memorandum decision, the district court also denied Franco's motion for new trial because it was untimely. The court's decision did not address Franco's ineffective assistance of trial counsel claims related to plea deals and an interpreter. However, the district court found Franco's remaining ineffective assistance of counsel claims were not persuasive because the claims were conclusory and without evidentiary support or were issues of trial strategy exclusively within trial counsel's discretion. The district court denied Franco's remaining claims because the issues were without evidentiary support, successive as a result of being previously raised on direct appeal, or could have been raised in Franco's direct appeal.

4

Franco appeals.

ANALYSIS

On appeal, Franco argues the district court erred when it denied his K.S.A. 60-1507 motion without an evidentiary hearing. A district court has three options when handling a K.S.A. 60-1507 motion:

> "'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

*Standard of review*

The standard of review depends upon which of these options a district court used. 311 Kan. at 578. When the district court summarily denies a K.S.A. 60-1507 motion, as the district court did here, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j) (2022 Kan. S. Ct. R. at 243); *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

As the movant, Franco bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, Franco's contentions must be more than conclusory, and Franco must either set forth an evidentiary basis to support those

5

contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

*Franco preserves only two claims based largely on ineffective assistance of counsel.*

Notably, however, Franco concedes the district court did not err in summarily denying most claims he made in his K.S.A. 60-1507 motion. Instead, he argues the district court erred when it did not order an evidentiary hearing on two of his claims: (1) the necessity of an interpreter under K.S.A. 75-4351, and (2) the ineffectiveness of trial counsel for "'fail[ing] to properly advise defendant on any plea deal.'" As previously noted, neither the State nor the district court addressed these claims below.

Issues not briefed are deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). As a result, Franco has waived or abandoned any remaining challenges to the district court's summary denial of his K.S.A. 60-1507 motion. He only challenges whether his trial counsel was ineffective for failing to secure an interpreter and ineffective for failing to communicate any plea deals.

To succeed on a K.S.A. 60-1507 claim of ineffective assistance of counsel, movant must establish (1) that counsel's performance was deficient under the totality of circumstances, and (2) that counsel's performance resulted in prejudice. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). "Prejudice" means there was a reasonable probability that the outcome of the trial or appeal would have been different but for counsel's deficient performance. *Sola-Morales*, 300 Kan. at 882.

6

To establish deficient performance under the first prong, "'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 485, 486 P.3d 1216 (2021) (quoting *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential and viewed contextually:

> "'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citations omitted.].'" *Khalil-Alsalaami*, 313 Kan. at 485-86 (quoting *Strickland*, 466 U.S. at 689).

*Franco's ineffective assistance of trial counsel claims based on an interpreter are vague and conclusory.*

In his first unaddressed claim, Franco claims the district court and his trial counsel erred in failing to appoint an interpreter. He argues the district court "should have made [a] direct inquiry of him" to find he should have been appointed an interpreter under K.S.A. 75-4351(b). See K.S.A. 75-4351(b) ("A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English . . . in any court proceeding involving such person and such proceeding may result in the confinement of such person or the imposition of a penal sanction against such person.").

And Franco contends his trial counsel was ineffective for informing the district court that he did not need an interpreter.

But while Franco claims the district court erred, he makes no argument to support his theory. Rather, he solely claims his trial counsel was ineffective for failing to secure an interpreter. And his theory regarding his *Miranda* warning is unclear at best, merely stating in a single sentence that "they never do any *Miranda* Rights" on him. As such, Franco has abandoned any argument claiming the district court erred under K.S.A. 75-4351(b). See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (finding issues not adequately briefed are deemed waived or abandoned); see also *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (finding a point raised incidentally in a brief and not argued therein is deemed waived or abandoned).

In *Khalil-Alsalaami*, the movant filed a K.S.A. 60-1507 motion that claimed, among other things, that his right to be present at all critical stages of his trial was violated when his trial counsel proceeded without an interpreter. The district court held an evidentiary hearing on the movant's claim and ultimately found the movant was proficient in English and meaningfully participated in his defense without the use of an interpreter. The district court also found trial counsel's decision to proceed without an interpreter was "'tactical.'" 313 Kan. at 488. A panel of this court disagreed, but our Supreme Court ultimately affirmed the district court's conclusion and found substantial competent evidence supported the district court's conclusion. 313 Kan. at 490-91.

After finding the district court's factual findings were supported by substantial competent evidence, the *Khalil-Alsalaami* court concluded the district court's findings were not legally erroneous because the movant "meaningfully participated in his own defense without using an interpreter." 313 Kan. at 493. The *Khalil-Alsalaami* court distinguished the case from *State v. Calderon*, 270 Kan. 241, 13 P.3d 871 (2000), wherein the Kansas Supreme Court found the district court violated the defendant's due

8

process right to be meaningfully present when the district court instructed the defendant's interpreter to not interpret for the defendant while counsel made their arguments to the jury. 270 Kan. at 253.

The *Khalil-Alsalaami* court also distinguished the facts of *Calderon* where there was "no dispute" the defendant needed an interpreter. 270 Kan. at 246. This fact was "hotly contested" by the parties in *Khalil-Alsalaami*, which resulted in the district court's factual finding that Khalil-Alsalaami was proficient in English and meaningfully participated in his defense without the use of an interpreter. 313 Kan. at 488.

Unlike in *Khalil-Asalaami*, the district court here did not grant an evidentiary hearing to consider Franco's interpreter claim. But regardless, Franco did not meet his burden of establishing entitlement to an evidentiary hearing on his interpreter claim because his claim was conclusory and he neither set forth an evidentiary basis to support his contention, nor is such basis evident from the record. See *Thuko*, 310 Kan. at 80.

In his K.S.A. 60-1507 motion, Franco stated he is from Puerto Rico and that his "first language is Spanish." Franco goes on to claim that he does not speak or understand English "so well." Based on his motion, and his argument on appeal, it seems Franco is arguing his trial counsel was ineffective for informing the district court that Franco did not need an interpreter. At a preliminary hearing, the following occurred:

> "THE COURT: We don't need an interpreter in this case, do we?
> "THE DEFENDANT: Yes—
> "[DEFENSE COUNSEL]: Okay.
> "Your honor, may I have just a moment, it's not my impression that we need an interpreter, but let me discuss that with him briefly. Your Honor, we are fine. We do not need an interpreter.
> "THE COURT: Okay."

9

Referencing this exchange between his trial counsel and the district court, Franco argued in his K.S.A. 60-1507 motion that his trial counsel's "impression" that Franco did not need an interpreter was evidence of his attorney's ineffectiveness. But this seems to be the full extent of his motion's argument. On appeal, Franco points out that "[t]he record of writings in this case . . . shows a very loose grasp of written English on the part of Franco, assuming Franco even wrote the pro se filings reflected therein." He adds that his first written document—a financial affidavit—was "written 99% in Spanish."

However, a review of the "99% Spanish" document Franco points to reveals some writing in Spanish but also includes multiple English phrases. ("god Bless . . . amen") ("Come over soon I haves Court Monday 24 next week. please thank you"). Furthermore, other documents contained in the record and referenced in Franco's appellate brief are written entirely in English. And Franco admits in his appellate brief that the district court "made inquiry of defendant directly" when the district court arraigned him, when he waived his speedy trial rights, and when he confirmed his statement to law enforcement was voluntary. He also concedes to testifying in English under direct and cross-examination at trial. Even so, he claims that "[t]hose hearings are insufficient to render a clear conclusion of Franco's grasp of English . . . [and] [f]urther evidence is required under the facts of this case."

Aside from the verbal "Yes" given by Franco when the district court asked if an interpreter was needed, Franco has not shown any instances in the record where he requested an interpreter or indicated he did not understand English. As he concedes, Franco addressed the district court directly in English multiple times. And even more telling is that Franco participated in his own defense when he testified in English on both direct and cross-examination.

While the record does support Franco's claim that he is from Puerto Rico and English is not his primary language, this is the extent to which the record supports any

10

part of Franco's claim. And while his verbal "Yes" that he stated in response to the district court's inquiry for an interpreter supports his argument that he wanted an interpreter, this brief excerpt of the overall proceedings does not show Franco's trial counsel's performance was deficient for failing to secure an interpreter. Rather, it shows Franco wanted an interpreter, but after discussing it with his counsel, counsel concluded an interpreter was not needed. Franco does not point to any other instance in the record where he indicated an interpreter was needed, nor does he point to an instance where he was unclear on the proceedings because he could not understand due to a language barrier. Franco's ineffective assistance of counsel claim based on his need for an interpreter, as pled in his K.S.A. 60-1507 motion, is conclusory and is simply not supported by the record. See *Thunko*, 310 Kan. at 80.

But even if we found trial counsel's performance was deficient, Franco makes no attempt to argue his counsel's deficient performance was prejudicial, or so "fundamentally unfair" that prejudice is presumed. See *Khalil*-Alsalaami, 313 Kan. at 497. Typically, to establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486.

Franco's motion makes no claims of prejudice, and his argument on appeal seems to presume that prejudice will be found because "[a] trial held in a language he could not fully understand, necessarily means he did not receive due process of law." But the *Khalil-Alsalaami* court specifically found prejudice will not be presumed for such claims because K.S.A. 75-4351 does not create a new constitutional protection and not every violation of K.S.A. 75-4351 results in a fundamentally unfair trial. 313 Kan. at 497-98. See *State v. Engelhardt*, 280 Kan. 113, 124, 119 P.3d 1148 (2005) (application of

11

structural error in *Calderon* "limited . . . to its unique facts"; cases subsequent to *Calderon* have recognized error implicating right to be present does not automatically merit reversal); see also *State v. Salary*, 309 Kan. 479, 487, 437 P.3d 953 (2019) (violation of statutory rights subject to harmless error analysis). The *Khalil-Alsalaami* court explained:

"In other words, K.S.A. 75-4351 does not enable us to bypass the second prong of the *Strickland* test. Ordinarily, to establish prejudice under this standard, a defendant must show that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland*, 466 U.S. at 694. Yet the 'concept of prejudice is defined in different ways depending on the context in which it appears.' *Weaver v. Massachusetts*, 582 U.S. —, 137 S. Ct. 1899, 1911, 198 L. Ed. 2d 420 (2017). *Strickland* cautions that its two-prong test should not be applied as 'mechanical rules' that distract from the 'ultimate focus' on the 'fundamental fairness of the proceeding.' *Strickland*, 466 U.S. at 696. This leaves open the possibility that a defendant, in some circumstances, can satisfy the second prong of *Strickland* by showing trial counsel's deficient performance in connection with K.S.A. 75-4351 rendered proceedings fundamentally unfair, even if it did not affect the outcome. Therefore, under the second prong of *Strickland*, we must look to the circumstances of each case to determine whether counsel's deficient performance in connection with the interpreter statute rendered the proceedings fundamentally unfair or otherwise affected the outcome of the verdict." *Khalil-Alsalaami*, 313 Kan. at 496-47.

While *Calderon* provided an avenue for presumed prejudice under the second prong in *Strickland*, later precedent nevertheless requires courts to "look to the circumstances of each case" to determine whether counsel's deficient performance rendered the proceedings fundamentally unfair or affected the outcome of the trial. *Khalil-Asalaami*, 313 Kan. at 497. In *Calderon*, our Supreme Court presumed prejudice because it was undisputed that the defendant required an interpreter to understand what was happening at trial, and the nexus between the lack of an interpreter and the fundamental fairness of the proceeding was apparent. 270 Kan. at 253. But in *Khalil-*

12

*Asalaami*, our Supreme Court refused to presume prejudice because the defendant's "English proficiency enabled him to proceed to trial and meaningfully participate in his defense without an interpreter," and "trial counsel's performance, at most, prevented [the defendant] from exercising his right to an interpreter." 313 Kan. at 497.

Like the defendant in *Khalil-Asalaami*, the record shows Franco's English proficiency enabled him to proceed with trial and participate in his own defense. As such, we do not presume his trial counsel's decision to not secure an interpreter was fundamentally unfair. And because Franco does not claim the outcome of his trial was affected in any meaningful manner, he has not met his burden of showing his trial counsel was ineffective.

Again, Franco's claims are conclusory, and Franco did not set forth an evidentiary basis to support his contentions, nor is the basis evident from the record. Additionally, de novo review shows the motions, files, and records of this cases conclusively establish Franco was not entitled to relief on this claim. As such, the district court did not err in refusing to grant an evidentiary hearing on this claim.

*Franco's ineffective assistance of counsel claim based on failing to communicate any plea deals is vague and conclusory.*

Franco also argues his trial counsel was ineffective for failing to advise him of any plea offer. Stated in full, Franco argued his trial counsel was ineffective because she "failed to properly advise defendant on any plea deal." On appeal, Franco's argument is expanded to contend that a plea offer for an on-grid crime—as opposed to the six, off-grid crimes he was charged with—"would have resulted in a different outcome for him." He goes on to argue that "[i]t is well-settled law that defense counsel must communicate such offers to their client" and the district court could not properly dispose of this claim without an evidentiary hearing.

Neither Franco's motions, nor his single-paragraph argument on appeal, meet his burden of establishing entitlement to an evidentiary hearing on this claim because his claim is entirely conclusory. He does not set forth an evidentiary basis for this claim, and an evidentiary basis is not evident from the record. See *Thuko*, 310 Kan. at 80. Franco simply states his trial counsel failed to communicate any plea deals and this is not sufficient to establish deficient performance under *Strickland*'s first prong, requiring "'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Khalil-Alsalaami*, 313 Kan. at 485.

Franco's claim can be denied as conclusory because he simply states his trial counsel did not communicate any plea deals. But there is nothing in the record that suggests the State ever offered a plea deal. Similarly, there is nothing in the record that suggests the State would have offered him a plea deal that would have resulted in an on-grid sentence, as claimed in his argument on appeal.

Put simply, Franco's ineffectiveness claim based on alleged plea offers is a bald assertion that was conclusively made without any evidentiary support. And like with his other claim on appeal, conclusory contentions are insufficient to establish entitlement to an evidentiary hearing. As a result, the district court did not err when it summarily denied Franco's K.S.A. 60-1507 motion.

Affirmed.